# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JONATHON MICHAEL HANKINS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:12-cv-00683-TWP-DML |
| DAVID H. DUNKLE MD., and GERALD B. MADER, | ) |
| Defendants. | ) |

## ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on Defendants David H. Dunkle M.D.'s ("Dr. Dunkle") and Gerald B. Mader's (Dr. Mader") (collectively, "Defendants") Motion for Summary Judgment (Filing No. 98). What remains for resolution in this civil action is Plaintiff Jonathon Michael Hankins' ("Mr. Hankins") claim that Defendants were deliberately indifferent to his serious medical needs while he was housed at the Johnson County Jail in violation of the due process clause. Specifically, the claims at issue are whether Defendants were deliberately indifferent to Mr. Hankins' elevated Dilantin level and whether they are liable under Indiana's tort of intentional infliction of emotional distress. *See* Filing No. 21 at p. 3, and Filing Nos. 125 and 157. All other claims have been dismissed or severed. *See* Filing No. 177.

After fully considering all of the briefing associated with this Motion, the Court finds that the Defendants' motion for Summary Judgment must be **GRANTED** on Mr. Hankins' Dilantin claim.[1] The intentional infliction of emotional distress claim is dismissed without prejudice for lack of jurisdiction.

---

[1] The Court notes that the briefing of this motion was extensive. Specifically, the Court considered Mr. Hankins' briefing at Filing No. 130, 131, 146, and 147, in ruling on the motion for summary judgment.

As an initial matter, the Court must address procedural defects in some of Mr. Hankins' *pro se* filings. In the course of briefing the Motion for Summary Judgment Mr. Hankins has sought to add additional claims. For example, he asserts that the Defendants were deliberately indifferent to his serious medical needs by allowing him to be placed in a psychiatric medical isolation observation cell, failing to correct the inhumane conditions in that cell, and by ignoring his excessive weight loss and screams for help. These claims are outside the scope of this litigation and the scope of the claims shall not be extended at this time in the proceeding. *See* Filing No. 21 at p. 3, and Filing No. 125 and 157. In addition, Mr. Hankins repeatedly refers to the Defendants' actions as criminal in nature. But this label does not promote his claims. Mr. Hankins cannot use this civil action to commence criminal charges against the Defendants. Only the United States may commence federal criminal charges and a private individual has no right to compel such a prosecution. *See Ragsdale v. Turnock*, 941 F.2d 501, 509 (7th Cir. 1991) (private persons generally have no right to enforce criminal statutes or to sue under them unless the statute also creates a private right of action) (Posner, J., concurring), *cert denied*, 502 U.S. 1035 (1992).

## I. <u>STANDARD OF REVIEW</u>

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving

party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372 (2007). The key inquiry is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex,* 477 U.S. at 330.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

Local Rule 56-1(b) requires a brief in opposition to a motion for summary judgment to include a section labeled "Statement of Material Facts in Dispute", which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the non-moving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be supported by appropriate citations to admissible evidence. *See* 56-1(e); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). The court need

only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003).

## II. <u>UNDISPUTED FACTS</u>

Applying the standards set forth above, the undisputed material facts are as follows:

On May 10 or 11, 2010, Mr. Hankins was booked into the Johnson County Jail as a pre-trial detainee on one count of dealing a schedule 2 substance, two counts of child molestation, and one count of possessing paraphernalia. It was noted that Mr. Hankins was currently taking several medications, including Dilantin. Dilantin is an anti-epileptic drug. Mr. Hankins states that at some point during the cataloging of his medication the medical staff negligently misread the prescription bottle and the amount of Dilantin prescribed. The correct amount was 100 mg. twice daily.[2]

On May 14, 2010, Mr. Hankins was noted by the nursing staff to have nausea, and Dr. Mader ordered Phenergan.

On May 16, 2010, as a result of Mr. Hankins' nausea and vomiting, he was transferred to the Johnson County Memorial Hospital, where Mr. Hankins reported he was currently detoxing. Mr. Hankins was evaluated by emergency physician Michael J. Welsh, M.D., and discharged to the Johnson County Jail with prescriptions of Colace and OxyContin.

Dr. Dunkle and Dr. Mader are licensed physicians in the State of Indiana who provide medical care to inmates at the Johnson County Jail. On May 21, 2010, it was noted that Mr. Hankins was banging his head on the sink in his cell, and was therefore moved to a padded cell. Dr. Dunkle and Dr. Mader were informed of Mr. Hankins' condition, and Dr. Mader ordered

---

[2] This fact does not create a genuine fact in dispute because neither Dr. Dunkle nor Dr. Mader were allegedly involved with this mistake. Filing No. 131 at p. 10-11.

4

continued observation. On May 27, 2013, Mr. Hankins complained of a swollen hand, but no swelling was noted by Nurse Nancy Parr ("Nurse Parr").

On May 31, 2010, Nurse Parr noted that Mr. Hankins seemed lethargic, that his left elbow was swollen, and that she would notify both of the doctors as well as the officers. After being notified, Dr. Mader started Mr. Hankins on Doxycycline for his swollen elbow. Later on May 31, 2010, a jail nurse evaluated Mr. Hankins, and noted Mr. Hankins was refusing his medications, including his antibiotic for his swollen elbow, and refusing to eat. His vitals were noted to be a temperature of 97.6°, blood pressure of 155/96, and pulse of 102. One hour checks were then ordered, with water being offered during every check, and it was noted that Mr. Hankins began eating.[3]

On June 1, 2010, Nurse Parr noted that Mr. Hankins was difficult to arouse, and that he was moaning and yawning frequently. When informed of Mr. Hankins' condition, Dr. Dunkle ordered that Mr. Hankins be transferred via EMS to Johnson County Memorial Hospital.

Following his transfer to Johnson County Memorial Hospital, Mr. Hankins was seen by emergency room physician Keith A. Miller, M.D., who noted that Mr. Hankins was on a number of psychiatric medications and that the jail staff had reported that Mr. Hankins may not have been taking those recently. Dr. Miller noted swelling of Mr. Hankins' left elbow and that x-rays were negative. Dr. Miller noted that a previous aspiration earlier in the morning showed gram positive cocci and white blood cells. Dr. Miller admitted Mr. Hankins and placed him on IV antibiotics.

---

3 Mr. Hankins states that he required emergent medical care on May 31, 2010, due to his elevated Dilantin levels and was denied care. Filing No. 131 at p. 23. However, there is no evidence which contradicts the Defendants' affidavits that the care they provided on May 31, 2010 was appropriate for Mr. Hankins' condition. Without any evidence to the contrary, Mr. Hankins has failed to show that there is a genuine issue of material fact as to the treatment he received on May 31, 2010.

Also on June 1, 2010, Mr. Hankins was evaluated by Dr. Dunkle, who noted that Mr. Hankins had a history of multiple sclerosis, seizure disorder, and an undiagnosed personality disorder. Dr. Dunkle noted that Mr. Hankins had cellulitis of his elbow and was placed on antibiotics, but had been refusing to take them. Dr. Dunkle noted that the infection had progressed.

Dr. Dunkle charted that the nursing staff believed Mr. Hankins to be acting somewhat obtunded and noted that while in the emergency department, Mr. Hankins was found to be suffering from progressive cellulitis and bursitis of the left elbow with a white cell count of 42,800, indicating an infection. Dr. Dunkle noted that he could not get any social history from Mr. Hankins as he was yelling profanities at Dr. Dunkle at the time of his evaluation. Dr. Dunkle also noted that Mr. Hankins was irate, screaming profanities, and attempting to strike anyone within a close distance. Dr. Dunkle noted that Mr. Hankins' elbow looked much improved at the time of admission and that he seemed to swing his arm around at the officer in the room without much difficulty.

Dr. Dunkle also noted that Mr. Hankins was quite lucid when he wanted to be and had attempted to manipulate staff at both the jail and at Johnson Memorial Hospital. He noted that Mr. Hankins seemed to be malingering quite often and that therefore they would keep a close eye on him. Dr. Dunkle also charted that he restarted Mr. Hankins' Dilantin and Lithium and would check Mr. Hankins' levels. Following Dr. Dunkle's evaluation, Mr. Hankins' Dilantin levels were checked, and noted to be high at 48.0.3. The normal range of Dilantin is 10-20. As a result, Dr. Dunkle ordered on the morning of June 2, 2010, due to his altered mental status, that his Dilantin be held.

On June 3, 2010, Mr. Hankins was discharged back to the Johnson County Jail by Dr. Mader. In the discharge summary, Dr. Mader noted that the only complication during Mr.

Hankins' hospital course was obtundation due to increased Dilantin levels. Obtundation indicates a mild to moderate reduction in alertness and decreased sensation of pain. Dr. Mader also noted that the Dilantin was held while Mr. Hankins was in the hospital, and that it would continue to be held at the Johnson County Jail. Dr. Mader charted that Mr. Hankins had improved rapidly, and that he was ready for discharge back to the Johnson County Jail.

After arriving at the Johnson County Jail, Mr. Hankins proceeded to cut his wrists, causing two lacerations to his right wrist and two lacerations to his left wrist. As a result, Mr. Hankins was transferred back to the Johnson County Memorial Hospital Emergency Department, where his wounds were cleaned and stapled. However, after being returned to the jail, Mr. Hankins removed his staples, and was again returned to the Emergency Department, where he was again treated and discharged back to Johnson County Jail, with emergency room physician Michael E. Pauszek, M.D. noting that Mr. Hankins' wounds to his wrists were superficial.

Following his discharge, Mr. Hankins' Dilantin continued to be held until June 25, 2010, at which time his Dilantin levels were .2. His Dilantin was restated on June 28, 2010. Mr. Hankins' Dilantin levels continued to be monitored throughout his incarceration, and were noted to be 17.8 on July 5, 2010, 27.9 on July 12, 2010, .6 on July 28, 2010, 3.4 on August 6, 2010, and 6.2 on August 19, 2010. Dr. Dunkle and Dr. Mader made several adjustments to Mr. Hankins' Dilantin dosage based on Mr. Hankins' levels.

### III. <u>DISCUSSION</u>

The Defendants argue that they are entitled to summary judgment because there is no evidence that they were deliberately indifferent to Mr. Hankins' elevated Dilantin levels. They also argue that Mr. Hankins intentional infliction of emotional distress claim should be dismissed.

A.  **Federal Claim**

As a pre-trial detainee, Mr. Hankins' claim of deliberate indifference falls under the Fourteenth Amendment; however, the same standard applies to both pre-trial detainees and convicted prisoners under the Eighth Amendment. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). The Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). In order for an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (construing *Estelle*). A condition is serious if "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997) (citation and internal quotations omitted). A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999).

The most which is established here is that Defendants exercised their professional judgment in relation to Mr. Hankins' Dilantin dosage. The evidentiary record negates the presence of the subjective state of mind required to show deliberate indifference by the defendants, *i.e.,* that the Defendants were "subjectively aware of [Mr. Hankins'] serious medical needs and disregarded an excessive risk that a lack of treatment posed to his health or safety." *Wynn v. Southward,* 251

F.3d 588, 593 (7th Cir. 2001). For example, the medical records and the Defendants' affidavits show that Dr. Dunkle and Dr. Mader appropriately treated Mr. Hankins' elevated Dilantin levels by holding his medication and by monitoring him. Mr. Hankins' Dilantin levels were confirmed to be elevated on June 1, 2010, following Mr. Hankins' transfer to Johnson Memorial Hospital pursuant to Dr. Dunkle's order. Dr. Dunkle then appropriately ordered that Mr. Hankins' Dilantin be held on the morning of June 2, 2010, an order that was reiterated by Dr. Mader in Mr. Hankins' discharge summary. Following Mr. Hankins' discharge from the hospital, the Dilantin continued to be held until June 25, 2010, pursuant to Dr. Dunkle's and Dr. Mader's orders, at which time his levels were rechecked and noted to be .2. It was only after it was confirmed that Mr. Hankins' Dilantin levels had fully decreased that Dr. Dunkle restarted the medication. Both physicians' affidavits support the appropriateness of holding Mr. Hankins' Dilantin as treatment in response to his elevated levels. In addition, Mr. Hankins' Dilantin levels were monitored throughout the remainder of his time at the Johnson County Jail after the medication was restarted. Mr. Hankins' arguments to the contrary are without the necessary evidentiary support to defeat the Defendants' motion for summary judgment.

At this stage in the proceeding, this Court accepts Mr. Hankins' view that he suffered while incarcerated at the Johnson County Jail. Anyone who is incarcerated while criminal charges are pending against them necessarily incurs a degree of hardship and stress. For Mr. Hankins, however, the ordinary incidents of incarceration were necessarily exacerbated by his prior illegal drug use (from which he was detoxing), his mental illness (including delusions and hallucinations), an infection, his attempts at self-harm (which resulted in his placement in a padded cell), and the provision of prescription medications, including Dilantin. In a perfect world, Mr. Hankins' medications would have been correctly noted at intake by the medical staff (not the Defendants in

9

this case). If that had happened, perhaps his Dilantin levels would not have been so elevated. The question at issue in this case, however, is not whether Mr. Hankins suffered at the Johnson County Jail, but whether the Defendants were deliberately indifferent to Mr. Hankins' elevated Dilantin levels. Based on the evidence presented, no reasonable juror could answer this question in the affirmative. The record reflects that Dr. Dunkle and Dr. Mader responded to Mr. Hankins' medical needs. When Mr. Hankins' Dilantin level was high, that medication was held, and then later restarted and monitored. The medical care they provided reflected professional judgment, practice, and standards throughout Mr. Hankins' incarceration, including treatment for Mr. Hankins' elevated Dilantin levels. In addition, they twice ordered that Mr. Hankins be transferred to the Johnson County Emergency Department for further treatment, including treatment for his self-inflicted wounds. Under these circumstances, the Defendants are entitled to the entry of judgment in their favor and against Mr. Hankins.

**B.    State Law Claim**

As demonstrated above, Dr. Dunkle and Dr. Mader are entitled to summary judgment on Mr. Hankins' 42 U.S.C. § 1983 deliberate indifference claim. Given that Mr. Hankins' state law medical malpractice claim was dismissed pursuant to this Court's Order dated May 17, 2013, Mr. Hankins' only remaining claim against Dr. Dunkle and Dr. Mader is a state law tort claim of intentional infliction of emotional distress. See Filing No. 41. When a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction over the supplemental claims or to dismiss them. 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 717 (7th Cir.), *cert. denied,* 119 S. Ct. 167 (1998); *Wright v. Associated Insurance Cos., Inc.,* 29 F.3d 1244, 1250 (7th Cir. 1994). The Seventh Circuit has noted that the purpose of supplemental jurisdiction is "economy in litigation," and noted "the

sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims," given that federal judicial resources had not yet been utilized. *Williams Electronics Games Inc., v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) *citing Brazinski v. Amoco Petroleum Additives, Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993) (emphasis in original).

In this case, there is a lack of a federal claim, neither substantial judicial or party resources have been utilized as to the state law claim of intentional infliction of emotional distress, and Mr. Hankins has or had an identical intentional infliction of emotional distress claim pending in state court against these Defendants. Accordingly, Mr. Hankins' claim of intentional emotional distress is dismissed without prejudice for lack of jurisdiction pursuant to 28 U.S.C. 1367(c)(3).

### IV. <u>CONCLUSION</u>

There is no doubt that Mr. Hankins was entitled to certain constitutional protections while confined at the Johnson County Jail, including constitutionally adequate medical care. He has not, however, come forward with a genuine issue for trial. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). "Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir. 1994), *cert. granted* 513 U.S. 1071 (1995). That is precisely the situation with respect to the present case, and the Defendants' Motion for Summary Judgment must therefore be **GRANTED** as to the federal claim. Mr. Hankins' remaining state law tort claim of intentional infliction of emotional distress is **DISMISSED without prejudice** pursuant to 28 U.S.C. 1367(c).

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 02/04/2015

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jonathon Michael Hankins
315 North Jackson Street, Apt. 1
Greencastle, Indiana 46135

Justin Carl Wiler
SCHULTZ & POGUE LLP
jwiler@schultzpoguelaw.com

Peter H. Pogue
SCHULTZ & POGUE LLP
ppogue@schultzpoguelaw.com